

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-21-00050-CV

**IN THE INTEREST OF A.G.** and T.G., Children

From the 288th Judicial District Court, Bexar County, Texas
Trial Court No. 2020-PA-00237
Honorable Richard Garcia, Judge Presiding

Opinion by:     Luz Elena D. Chapa, Justice

Sitting:     Rebeca C. Martinez, Chief Justice
    Luz Elena D. Chapa, Justice
    Liza A. Rodriguez, Justice

Delivered and Filed: July 21, 2021

AFFIRMED

A.G. ("Alex")[1] appeals the trial court's order terminating the parent-child relationship with his children, A.G. and T.G. Alex argues the evidence is legally and factually insufficient to support the trial court's findings of statutory grounds for terminating his rights. We affirm the trial court's order.

## BACKGROUND

In February 2020, the Department of Family and Protective Services filed an original petition for protection of Amy (born in 2009), A.G. (born in 2010), and T.G. (born in 2015). The petition sought emergency removal of the children from Alex and Tracy and appointment of the

---

[1] To protect the identity of the minor children, we refer to the father and mother using the pseudonyms "Alex" and "Tracy." We refer to the two children who are the subject of this appeal by their initials, and we refer to Tracy's oldest daughter as "Amy." *See* TEX. FAM. CODE § 109.002(d); TEX. R. APP. P. 9.8.

Department as the children's temporary sole managing conservator. The basis for the petition was alleged medical neglect of Amy and domestic violence, both of which endangered the safety of the children. The petition alleged Alex was the father of only A.G. and T.G. The Department sought to reunify the children with a parent and sought alternative relief, including termination of parental rights, if reunification could not be safely accomplished.

The trial court signed an emergency order for protection of the children and placed them in the temporary conservatorship of the Department. The court also appointed an attorney and guardian ad litem for the children and attorneys ad litem for the parents. After the full adversary hearing, the trial court ordered Tracy and Alex each to submit to a psychological evaluation, attend and cooperate fully in counseling to address the specific issues that led to the removal of the children, attend, participate, and successfully complete parenting classes, and submit to a drug and alcohol assessment and testing. In addition, the court ordered both parents to comply with each requirement of any service plan or amended service plan prepared by the Department during the suit. Finally, the court ordered the children to begin trust-based counseling as soon as possible. The court ordered Tracy to have weekly supervised visitation with all three children and two additional visits a week with Amy at her medical appointments. Alex was ordered to have two supervised visits a month with A.G. and T.G.

Family Plans for each parent were filed with the court in March 2020. In its status hearing order, the court approved the Plans and found that Alex and Tracy had each received, reviewed, and signed their plan. The court found throughout the case that Tracy was participating in services and making progress toward reunification with her children, but that Alex had not shown adequate or appropriate compliance with the plan of services. In October 2020, the trial court ordered the children returned to Tracy.

The final hearing before the court took place January 25, 2021. The order setting the case authorized the parties to appear by Zoom videoconference, by telephone, or in person. Although Alex's attorney ad litem appeared, Alex did not appear. At the conclusion of the trial, the court named Tracy permanent managing conservator of all three children and terminated the parent-child relationship between Alex and the children A.G. and T.G. In support of the termination order, the trial court found by clear and convincing evidence that Alex engaged in conduct that endangered the physical or emotional well-being of the children, constructively abandoned the children, and failed to comply with the court-ordered provisions of the family service plan. *See* TEX. FAM. CODE § 161.001(b)(1)(E), (N), & (O). The court also found by clear and convincing evidence that termination of Alex's parental rights is in the children's best interest. *See id.* § 161.001(b)(2). Alex filed a timely notice of appeal, arguing the evidence is legally and factually insufficient to support the trial court's findings under section 161.001(b)(1)(E), (N), and (O). He does not challenge the trial court's finding that termination of his rights is in the children's best interest.

## STANDARD OF REVIEW

A trial court may terminate the parent-child relationship only if it finds by clear and convincing evidence (1) one of the statutory grounds for termination and (2) that termination is in the child's best interest. *Id.* § 161.001. To determine if the heightened burden of proof was met, we employ a heightened standard of review—judging whether a "factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations." *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). This standard guards the constitutional interests implicated by termination, while retaining the deference an appellate court must have for the factfinder's role. *Id.* at 23, 26. We are not to reweigh issues of witness credibility but "'must defer to the [factfinder's] determinations so

long as those determinations are not themselves unreasonable.'" *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (quoting *Sw. Bell Tel. Co. v. Garza*, 164 S.W.3d 607, 625 (Tex. 2004)).

In reviewing the legal sufficiency of the evidence, we examine the record in the light most favorable to the trial court's findings, assuming any disputed facts were resolved in favor of the findings if a reasonable factfinder could do so and disregarding any evidence the factfinder reasonably could have disbelieved. *See In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). But we may not disregard undisputed facts that do not support the finding; to do so would not comport with the State's heightened burden of proof by clear and convincing evidence. *Id.*

In a factual sufficiency review, we consider and evaluate the disputed evidence to determine if it is "so significant that a factfinder could not reasonably have formed a firm belief of or conviction" on the challenged finding. *Id.* We may conclude the evidence is factually insufficient only if, "in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction." *Id.* In our review, we remain mindful that the factfinder is the sole judge of the credibility of the witnesses and the weight to be given their testimony, and we may not substitute the trial court's judgment with our own. *In re J.O.A.*, 283 S.W.3d 336, 346 (Tex. 2009); *In re H.R.M.*, 209 S.W.3d 105, 109 (Tex. 2006).

## DISCUSSION

The Department's case worker, Toby David-Tripp, was the only witness at trial, and no exhibits were admitted into evidence.[2]

---

[2] We decline the Department's invitation to consider the CASA reports filed during the case as substantive evidence. The CASA did not testify and none of her reports were offered or admitted into evidence. The CASA appeared at trial and the trial judge told her he had read the final report. However, the judge did not suggest he was considering its substance as evidence. *See In re J.E.H.*, 384 S.W.3d 864, 870 (Tex. App.—San Antonio 2012, no pet.) (trial court may not take judicial notice of the truth of factual allegations made in filings in its records).

The Department's petition sought removal of the children from Alex and Tracy on grounds of neglect and domestic violence. David-Tripp testified the allegation of neglect was based on Alex and Tracy's failure to provide needed medical care to Tracy's oldest child, Amy. Amy had a previous kidney transplant, which was failing, and she was required to go to a hospital for dialysis treatments multiple times a week. However, Alex kept Tracy in the home and prohibited her from leaving. Tracy was unable to use a telephone to access medical care for the children and unable to leave the house to take Amy to the doctor or hospital. Removal of the children was also based on allegations that Alex verbally and physically abused Tracy. Prior to the case being filed, Alex had punched Tracy in the face several times in the children's presence.

Alex's violence against Tracy continued while the case was pending. David-Tripp testified that at the time of trial, there was a protective order in place against Alex. He also testified there was an outstanding warrant against Alex arising from a charge of making a terroristic threat against Tracy while the case was pending. The children all reported seeing Alex hit their mother and told David-Tripp and others they are still very afraid of Alex.

David-Tripp testified Alex did not complete any of his service plan. He started a domestic violence class, but the Department received unfavorable reports from the provider and Alex stopped attending. He continues to deny any domestic violence and blames Tracy for the children having been removed. Alex did not begin a single parenting class and refused to attend counseling because he did not believe he needed it since "he wasn't crazy." Alex did not attend any of the allowed visits with his children during the eleven months the case was pending. David-Tripp testified that Alex's failure to visit the children and work on his relationship with them contributed to their continued fear of him.

Tracy fully completed her service plan while the case was pending, and the court returned the children to her care in October 2020. David-Tripp testified she is doing very well with the

children and they continue to engage in family counseling. Amy needs a second kidney transplant and has dialysis three or four times a week. Tracy is ensuring she gets the medical care she needs.

In his first issue, Alex argues the Department failed to meet its burden to show he engaged in conduct that endangered A.G.'s and T.G.'s physical or emotional well-being. He argues all the evidence concerned conduct directed toward Tracy or Amy, not toward his biological children, A.G and T.G. He contends termination of his rights based on his medical neglect of Amy, who is not his biological child, "is not proper" and that there is no evidence he endangered his children because he did not direct any physical violence against them.

To "endanger" a child means to expose the child to loss or injury or to jeopardize her emotional or physical health. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987). A finding of endangerment of a child under section 161.001(b)(1)(E) must be based on the parent's course of conduct that may include acts and failures to act. *In re M.J.M.L.*, 31 S.W.3d 347, 351 (Tex. App.—San Antonio 2000, pet. denied). Although the endangerment must be a direct result of a parental course of conduct, the conduct does not have to be specifically directed at the child or be done in the child's presence; nor does it have to cause an actual injury to the child or constitute a concrete threat of injury to the child. *Boyd*, 727 S.W.2d at 534; *M.J.M.L.*, 31 S.W.3d at 350. Rather, the statute is satisfied by showing the parental conduct jeopardized the child's physical or emotional well-being. *M.J.M.L.*, 31 S.W.3d at 351. And the danger or jeopardy to the child's well-being may be inferred from the nature of parental misconduct alone. *Boyd*, 727 S.W.2d at 533.

The undisputed evidence established that Alex engaged in violent and physically abusive conduct in the home and in the presence of A.G. and T.G. Alex did not take steps to address the issues that led him to commit violence against the children's mother, and by the end of the case, she had obtained another protective order against him and the children remained afraid of him. A

parent's abusive or violent conduct, want of self-control, and propensity for violence can be evidence of endangerment. *In re R.S.-T.*, 522 S.W.3d 92, 110 (Tex. App.—San Antonio 2017, no pet.). Such conduct exposes a child to injury and poses a risk to the well-being of a child, even if the past conduct did not occur in the child's presence. *In re R.G.F.*, No. 04-20-00158-CV, 2020 WL 6293442, at *3 (Tex. App.—San Antonio Oct. 28, 2020, no pet.) (mem. op.); *see In re M.M.M.*, No. 01-17-00980-CV, 2018 WL 1954178, at *12 (Tex. App.—Houston [1st Dist.] Apr. 26, 2018, pet. denied) (mem. op.) (citing cases).

The evidence also established that Alex engaged in conduct that directly interfered with the ability of Amy, A.G.'s and T.G.'s half-sibling, to receive the medical services she critically needed. Alex discounts his medical neglect of Amy on the ground that she is not his biological child. However, a parent's abuse or neglect of the other parent or other children can support a finding of endangerment of a child who was not present or not even born at the time of the conduct. *In re C.J.O.*, 325 S.W.3d 261, 265 (Tex. App.—Eastland 2010, pet. denied). Alex's willingness to risk the health of a child in order to maintain control over the child's mother put the physical and emotional well-being of all the children in jeopardy.

We conclude the trial court reasonably could have formed a firm belief or conviction about the truth of the State's endangerment allegation, and the evidence is both legally and factually sufficient to support the court's finding under section 161.001(b)(1)(E) of the Texas Family Code. *See In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). "Only one predicate finding under section 161.001(1) is necessary to support a judgment of termination." *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). Because the evidence is legally and factually sufficient to support the trial court's finding that Alex knowingly engaged in conduct that endangered the children's physical or emotional well-being, no review of the trial court's findings pursuant to sections 161.001(1)(N) or (O) is necessary.

We affirm the trial court's judgment.

Luz Elena D. Chapa, Justice